UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————

MELISSA JEAN RICHARDS,

                    Plaintiff,

v.                                                  6:17-CV-0311
                                                    (TWD)

COMM'R OF SOC. SEC.,

                    Defendant.
————————————————————————

APPEARANCES:                                 OF COUNSEL:

STANLEY LAW OFFICES LLP          STEPHANIE VISCELLI, ESQ.
  Counsel for Plaintiff
215 Burnet Ave
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.       JUNE L. BYUN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **DECISION and ORDER**

Currently before the Court, in this Social Security action filed by Melissa Jean Richards ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11 and 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1971, making her 39 years old at the alleged onset date and 44 years old at the ALJ's decision.  Plaintiff reported obtaining a GED.  She has past work as a psychiatric aide.  At the initial application level, Plaintiff alleged disability due to a neck and shoulder injury, fibromyalgia, spinal stenosis, a tumor in her right arm, degenerative disc disease ("DDD"), insomnia, posttraumatic stress disorder ("PTSD"), herniated discs, arthritis in her back/knees/hips, chronic obstructive pulmonary disease ("COPD"), depression, anxiety, acid reflux, and high cholesterol.

### B.    Procedural History

Plaintiff applied for a period of disability and Disability Insurance Benefits on November 1, 2013, alleging disability beginning August 21, 2010.  Her application was initially denied on January 29, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Robert E. Gale on May 21, 2015.  On July 29, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 11-30.)[1]  On January 19, 2017, the Appeals Council denied her request for review, making the ALJ's decision the final decision[2] of the Commissioner.  (T. 1-7.)

---

[1]    The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

[2]    The record also contains an administrative hearing transcript before ALJ Thomas P. Tielens dated June 24, 2010, apparently relating to a prior application dated March 30, 2009.  (T. 31-63, 106.)

## C.    The ALJ's Decision

The ALJ made the following seven findings of fact and conclusions of law.  (T. 17-25.)
First, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act
on March 31, 2014.  (T. 17.)  Second, the ALJ found she did not engage in substantial gainful
activity during the period from her alleged onset date of August 21, 2010, through her date last
insured of March 31, 2014.  (*Id*.)  Third, the ALJ determined Plaintiff's DDD of the cervical
spine with cervical radiculopathy, left shoulder AC joint degeneration, and DDD of the lumbar
spine were severe impairments, and her alleged mental impairments, fibromyalgia, acid reflux,
diverticulitis, high cholesterol, hypoglycemia, breathing difficulties, bilateral hip and knee pain,
and history of surgery to remove a benign tumor from her right humerus were non-severe
impairments.  (T. 17-20.)  Fourth, the ALJ found she did not have an impairment or combination
of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404,
Subpart P, App. 1 (the "Listings").  (T. 20.)  Specifically, the ALJ considered Listings 1.02
(major dysfunction of a joint), 1.04 (disorders of the spine), and 12.00 (adult mental disorders).
(*Id*.)  Fifth, the ALJ ascertained Plaintiff had the residual functional capacity ("RFC") to

> lift and/or carry 20 pounds occasionally and ten pounds frequently,
> stand and walk for two hours each out of an eight-hour workday for
> four hours total, sit for six hours out of an eight-hour workday, and
> push and pull 20 pounds occasionally and ten pounds frequently.
> She can climb ramps and stairs, but no ladders, ropes, or scaffolds.
> She can occasionally stoop, kneel, and crouch, and rarely crawl.  She
> can reach in all directions with her dominant right upper extremity,
> but only to the chest level with her left arm and hand.  There are no
> limitations for handling, fingering, and feeling.  She has no visual or
> communicative limitations.   The claimant must avoid moderate
> exposure to fumes, dusts, odors, gases, and other known pulmonary
> irritants.   The claimant should not work in close proximity to
> moving machinery or unprotected heights.  Mentally, the claimant
> can understand, remember, learn new, and perform both simple and
> complex tasks, maintain attention and concentration, attend to a

> routine and maintain a schedule, make appropriate decisions, and
> interact appropriately with others.

(T. 20-21.)  Sixth, the ALJ found Plaintiff was unable to perform any past relevant work.  (T.

23.)  Seventh, and last, the ALJ determined there were jobs existing in significant numbers in the

national economy that Plaintiff could perform.  (T. 24-25.)  The ALJ therefore concluded

Plaintiff was not disabled from the alleged onset date through the date last insured.

### D.    The Parties' Briefings on Their Cross-Motions

#### 1.    Plaintiff's Motion for Judgment on the Pleadings

Plaintiff makes four arguments in support of her motion for judgment on the pleadings.

(Dkt. No. 11 at 1, 4-12.[3])  First, Plaintiff argues the ALJ erred at Step Two when he failed to find

her depression and anxiety to be severe impairments.  (*Id*. at 5-6.)  Plaintiff asserts she has a long

history of psychiatric problems with a longitudinal treatment record, but the ALJ erred in finding

these impairments non-severe because one-time consultative examiner Jeanne Shapiro, Ph.D.,

opined her impairments were well-controlled.  (*Id*. at 6.)  According to Plaintiff, the ALJ erred in

stating she was discharged from Mental Health Connections due to non-compliance and the ALJ

disregarded substantial evidence of Plaintiff's mental health treatment.  (*Id*.)  Plaintiff reasons

her mental impairments are severe because they have resulted in more than minimal limitations

of function and the ALJ's error at Step Two also impacted the analysis of the limitations

resulting from all of Plaintiff's impairments throughout the rest of the sequential evaluation

process.  (*Id*.)

Second, Plaintiff argues the RFC finding is not supported by substantial evidence and is

the product of legal error.  (*Id*. at 6-9.)  Plaintiff contends the ALJ violated the treating physician

---

[3]    Page references to the parties' briefs identified by docket number are to the numbers
assigned by the CM/ECF docketing system maintained by the Clerk's Office.

rule and his RFC determination is silent with respect to Plaintiff's use of a handheld assistive device, as well as the New York State Workers' Compensation Board disability rating (based upon Plaintiff's cervical spine disorder alone).  (*Id*.)  Further, the opinion of treating physician Julie Betro-Shkane, D.O., was erroneously given limited weight because substantial evidence supports this opinion.  (*Id*. at 9.)

Third, Plaintiff argues the ALJ did not properly evaluate Plaintiff's subjective statements in accordance with the relevant legal standards.  (*Id*. at 9-10.)  Plaintiff notes her testimony must be evaluated with the awareness that a claimant need not be an invalid to be found disabled.  (*Id*. at 10.)  She contends a claimant's participation in activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof the claimant engaged in those activities for sustained periods of time comparable to those required to perform a sedentary job.  (*Id*.)  Therefore, the ALJ's decision is not based upon substantial evidence or the proper legal analysis.  (*Id*.)

Lastly, Plaintiff argues the Commissioner has not met her burden at Step Five of the sequential evaluation process because the vocational expert ("VE") testimony cannot provide substantial evidence to support the denial inasmuch as the hypothetical question posed to the VE was based upon the ALJ's flawed RFC.  (*Id*. at 11.)  Therefore, the Commissioner has not demonstrated a significant number of jobs exist which Plaintiff could perform.  (*Id*.)

### 2.    Defendant's Motion for Judgment on the Pleadings

Defendant makes four arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 13 at 7-21.)  First, Defendant argues the ALJ properly evaluated Plaintiff's impairments at Step Two.  (*Id*. at 7-12.)  Because the ALJ proceeded to determine Plaintiff's RFC, and because the RFC and Step Two findings relate to functional limitations, Defendant

contends the real issue is whether Plaintiff had restrictions that would preclude the work as specified in the RFC, and Plaintiff has failed to show she had greater limitations. (*Id*. at 7.) Plaintiff's statement she had a long history of psychiatric problems for which there is a longitudinal treatment record is a blanket statement insufficient to establish disability. (*Id*. at 9.) Defendant also notes (a) Plaintiff was discharged from treatment due to noncompliance, (b) despite her reports of anxiousness, mental status evaluations were mostly normal, and (c) she denied experiencing psychological symptoms and declined a referral for therapy. (*Id*. at 9-10.) According to Defendant, the ALJ considered the treatment records, relied on the opinions of consultative psychologist Dr. Shapiro and State agency medical consultant M. Marks, Ph.D., and conducted an analysis using the psychiatric review technique at Step Two. (*Id*. at 10-11.) Any failure to find Plaintiff's alleged depression and anxiety to be severe impairments was inconsequential as the ALJ found Plaintiff had other severe impairments, continued beyond Step Two in the sequential evaluation, and properly accounted for all limitations arising from these impairments in the RFC finding. (*Id*. at 11-12.)

Second, Defendant argues the ALJ's RFC assessment is supported by substantial evidence. (*Id*. at 12-18.) Defendant notes the ALJ carefully considered all of the evidence of record when determining the RFC, and gave significant weight to the opinion of consultative examiner Tanya Mwantuali, M.D. (*Id*. at 13-14.) Dr. Mwantuali's opinion indicating mild to moderate limitations was consistent with the ALJ's finding for a limited range of sedentary work, and the ALJ arguably assessed even greater limitations than those found by Dr. Mwantuali. (*Id*. at 14-15.) The ALJ properly afforded Dr. Betro-Shkane's opinion little weight because the overly restrictive opinion was inconsistent with the objective evidence of record, including the treatment notes from Dr. Betro-Shkane's own office. (*Id*. at 16-17.) The ALJ also

considered Plaintiff's ability to perform several activities of daily living which contradicted Dr. Betro-Shkane's significant postural limitations. (*Id*. at 17.)

The ALJ also considered the opinions of W. David Ferraraccio, M.D., and Patrick Connolly, M.D., who evaluated Plaintiff for Workers' Compensation purposes, giving their opinions some weight. (*Id*. at 15-16.) As to Plaintiff's Workers' Compensation rating, such decisions are not relevant to disability under the Social Security Act and the RFC determination is an issue reserved to the Commissioner. (*Id*. at 16.) Ultimately, Defendant argues that indications of partial disability have very limited probative value. (*Id*.)

As to the lack of a limitation for use of a cane in the RFC, Defendant contends Plaintiff did not carry her burden of proving a cane was medically necessary. (*Id*. at 18.) While Plaintiff brought a cane to the hearing and Dr. Betro-Shkane indicated Plaintiff needed a cane, there is no medical treatment documentation showing a hand-held assistive device was medically necessary. (*Id*.) Moreover, the record contains substantial evidence Plaintiff could walk adequately without her cane, including Plaintiff's lack of an assistive device at the consultative examination with Dr. Mwantuali. (*Id*.)

Third, Defendant asserts substantial evidence supports the ALJ's credibility determination. (*Id*. at 19-21.) The ALJ considered (a) Plaintiff's treatment history including conservative treatment modalities, (b) the improvement of her pain levels on a medication regimen, (c) the improvement of her musculoskeletal symptoms with physical therapy and despite improvement Plaintiff failed to continue treatment, (d) her lack of compliance with mental health treatment and declination of a counseling referral, and (e) her reported daily activities including living alone, driving, shopping, cooking, and cleaning. (*Id*.)

Finally, Defendant argues the ALJ met his burden of proof at Step Five and substantial evidence supports the ALJ's decision that Plaintiff was not disabled within the meaning of the Act.  (*Id*. at 21.)  Because there is substantial evidence to support the ALJ's RFC finding, which corresponds to the hypothetical posed to the VE, the ALJ was entitled to rely on the VE's testimony in finding there is sufficient work in the national economy that Plaintiff can do.  (*Id*.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

> severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.  Under the cases
> previously discussed, the claimant bears the burden of the proof as
> to the first four steps, while the [Commissioner] must prove the final
> one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.   Substantial Evidence Supports the ALJ's Finding that Plaintiff's Mental Impairments are not Severe

At Step Two, the ALJ must determine whether the claimant has a severe impairment that

significantly limits her physical or mental abilities to do basic work activities.  20 C.F.R. §

404.1520(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing,

pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying

out simple instructions, using judgment, and responding appropriately to supervision, co-

workers, and usual work situations.  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)

(citing *Gibbs v. Astrue*, 07-CV-10563 (GBD/AJP), 2008 WL 2627714, at *16 (S.D.N.Y. July 2,

2008; 20 C.F.R. §§ 404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is

limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or

establishing that a person has been diagnosed or treated for a disease or impairment' is not, by

itself, sufficient to render a condition severe."  *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v.

Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y.

1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity.  *Id*.

(citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371 (FJS/GJD), 2008 WL 2783418, at \*6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated that the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236 (GLS/VEB), 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *Report and Recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Here, the ALJ noted there was a lack of evidence in the record to support Plaintiff's allegations that her psychological symptoms more than minimally affected her ability to work. (T. 18.)  The ALJ found Plaintiff had no restriction in performing activities of daily living, no difficulties in maintaining social functioning or concentration, persistence or pace, and no episodes of decompensation.  (T. 19.)  In finding Plaintiff's mental impairments to be non-severe, the ALJ afforded significant weight to the opinions of Drs. Shapiro and Marks based on their programmatic expertise and because their opinions were consistent with the objective evidence in the record.  (T. 20.)  The ALJ gave some weight to the Global Assessment of Functioning ("GAF") scores ranging from 65 to 74 because they were consistent with the objective evidence in the record showing generally normal mental status examinations.  (*Id.*)

In his analysis of Plaintiff's alleged mental impairments, the ALJ noted Plaintiff was involved in mental health treatment with Mental Health Connections until November 2013 when she was discharged due to noncompliance.  (T. 19, 774.)  Plaintiff's mental status evaluations were within normal limits, she denied experiencing any psychological symptoms, her psychotropic medications helped alleviate her psychological symptoms, and she declined a referral for counseling despite complaining of insomnia associated with her depression.  (T. 19, 386, 391, 407, 410, 503, 510-11, 527, 530, 532, 536, 560, 563, 566, 698, 720.)  Dr. Shapiro's consultative examination findings and Plaintiff's statements at that examination indicated her psychological symptoms were well-controlled with medication.  (T. 19, 681-85.)  Dr. Shapiro found Plaintiff's demeanor was cooperative with adequate social skills, normal motor behavior, appropriate eye contact, fluent speech intelligibility, coherent and goal-directed thought process, congruent affect, calm mood, and clear sensorium.  (T. 19, 683.)  She had good insight and judgment and intact orientation, attention and concentration, and recent and remote memory skills.  (T. 19, 683-84.)  She reported she was able to dress, bathe, and groom herself; she could manage money and drive, do limited cooking and food preparation, perform limited cleaning, do laundry when she felt up to it, and complete shopping some of the time; she got along well with friends and family some of the time; and she spent her days doing chores, reading, watching television, and going on the Internet.  (T. 19, 684.)  The ALJ noted Plaintiff's activities of daily living as reported to Dr. Shapiro and pointed out Plaintiff lives alone, suggesting a higher level of functioning than she acknowledged.  (T. 19, 681.)

Dr. Shapiro's findings are also consistent with Plaintiff's testimony at the administrative hearing, her reports of activities of daily living to consultative examiner Dr. Mwantuali, and Plaintiff's mental health treatment records.  (T. 70-71, 83-93, 687.)  Plaintiff testified she lives

alone and does not do much besides watching television and reading.  (T. 70-71, 83.)  She does household chores, laundry, cooking, and shopping as much as she can and plays computer games as a hobby.  (T. 84, 86-87, 89-93, 687.)  She does "bigger cleaning" like vacuuming and mopping every few weeks and usually lies down on the couch or bed afterwards because of pain.  (T. 93.)  Plaintiff also testified she is not currently receiving regular mental health counseling, although her primary care doctor prescribes her depression medication.  (T. 82-83.)

While Plaintiff argues the ALJ "flat out lies when stating [she] was discharged from Mental Health Connections due to non-compliance," she points to no evidence to support this argument.  (Dkt. No. 11 at 6; T. 19.)  Indeed, treatment records from Mental Health Connections indicate Plaintiff began treatment for chronic dysthymia in April 2010 and maintained compliance with individual therapy and medication management for most of her time throughout her treatment.  (T. 774.)  In October 2012, Linda Talarico, N.P., noted Plaintiff was doing nicely on her medications with no side effects.  (T. 514.)  These records also note several cancellations between 2011 and 2013 or "no call/no shows" in which Plaintiff did not present for her appointments.  (T. 509, 516, 526, 529, 534-35, 538-39, 542-45.)  She was ultimately discharged from treatment in November 2013 because she did not return or was non-responsive to outreach attempts and the last date of contact was listed as April 19, 2013.  (T. 774-77.)  Her last treatment appointment, however, was May 15, 2013, at which time she was reminded to keep her appointments.  (T. 508.)

Plaintiff also contends the ALJ's decision "attempts to trivialize [her] very severe psychiatric impairments by stating they are non-severe because a one-time consultative physician for the Administration opined the impairments were well controlled."  (Dkt. No. 11 at 6; T. 19.)  Again, Plaintiff points to no evidence to support this argument and ignores clear statements in

the ALJ's decision that he relied not only on Dr. Shapiro's examination findings and opinion, but also normal mental status evaluations at Mental Health Connections and Plaintiff's own reports to her mental health providers that her medications helped alleviate her psychological symptoms. (T. 18-20, 386, 391, 407, 410, 503, 510-11, 527, 530, 532, 536, 560, 563, 566, 698, 720.)   At the time of discharge from Mental Health Connections, Plaintiff was noted to have made quite significant progress since her start in therapy; she had dealt with most of her issues regarding her work injury and changes in her life because of it; she had made progress with family issues which had been another contributing factor to her depression and anxiety; and she was stabilized on medication.  (T. 774.)  Although she was struggling with getting out of the house, she attributed this more to chronic pain from her work injury than to her mental health.  (*Id*.)

The record does not support Plaintiff's argument that her mental impairments should have been found severe.  Nonetheless, the Court finds any error by the ALJ in failing to find these impairments severe would be harmless because he found other impairments to be severe, continued with the sequential evaluation, and provided explanation in his decision showing he adequately considered the evidence related to Plaintiff's mental impairments.  *Fuimo*, 948 F. Supp. 2d at 269-70; *Reices-Colon*, 523 F. App'x at 798.

For the above reasons, the Court finds the ALJ's determinations regarding Plaintiff's mental impairments are supported by substantial evidence.  Remand is therefore not required on this basis.

### B.    Substantial Evidence Supports the RFC Determination

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. § 404.1527(c).  "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . [.] Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

15

Plaintiff contends the RFC finding is not supported by substantial evidence because (a) the ALJ violated the treating physician rule, (b) the RFC determination is silent as to Plaintiff's use of a handheld assistive device, and (c) the RFC determination is silent as to the Workers' Compensation classification based upon Plaintiff's cervical spine disorder.  (Dkt. No. 11, at 1, 6-9.)  The Court finds these arguments unpersuasive.

### 1.    The ALJ's Assessment of the Opinion Evidence

In March 2009, as part of Plaintiff's Workers' Compensation claim, Dr. Ferraraccio assessed a left shoulder strain with early osteoarthritis of the AC joint, and multi-level DDD in the cervical spine per an MRI dated September 5, 2008, with mild central stenosis at C5-C6, neuroforaminal stenosis bilaterally at C5-C6, and C6 radiculopathy.  (T. 866.)  He found a marked level of temporary partial disability causally related to Plaintiff's December 2007 injury and indicated Plaintiff could return to work with light duty work restrictions.  (T. 866-67.)  The ALJ afforded this opinion some weight because it was generally consistent with the evidence in record and supported the conclusion that Plaintiff's subjective complaints exceeded the objective clinical findings of record.  (T. 21.)

In March 2012, as part of Plaintiff's Workers' Compensation claim, Dr. Connolly assessed continued neck and left shoulder pain associated with the December 2007 injury with MRI evidence of multilevel disc degeneration, nerve studies consistent with C6 radiculopathy reported and no benefit from a long period of non-surgical treatment, status post right humerus surgery for a bone tumor unrelated to the December 2007 injury, and a history of asthma, COPD, gastroesophageal reflux disease ("GERD"), Barrett's Esophagus, depression, fibromyalgia, and symptomatic DDD of the lumbar spine unrelated to the December 2007 injury.  (T. 879.)  He indicated treatment relating to the December 2007 injury had been appropriate, medically

necessary and unsuccessful, and Plaintiff had reached maximum medical improvement at that time. (*Id.*) He opined she was not capable of returning to the job she was performing at the time of the injury, but was capable of full-time light work. (*Id.*) He found her capable of fine manipulation of the hands, occasional lifting or carrying of 20 pounds, standing, sitting, or walking eight hours a day, five days a week, occasional bending and squatting, and occasional simple grasping, pushing, and pulling within her weight limit of 20 pounds or less. (*Id.*) She had limitations for repetitive reaching above shoulder height; she was not capable of crawling, climbing, or running; and she had no causally related restrictions for lower extremity activity. (*Id.*) The ALJ afforded this opinion some weight because Dr. Connolly had the opportunity to examine Plaintiff and review her medical records, but the ALJ noted he found greater limitations for standing and walking than those identified by Dr. Connolly. (T. 21.)

In January 2014, consultative examiner Dr. Mwantuali noted Plaintiff had an abnormal gait with a limp on the left side, she could walk on her heels but not her toes, she had a partial squat and normal stance, used no assistive devices, was able to rise from a chair without difficulty, and she needed no help changing for the examination or getting on and off the examination table. (T. 687.) Plaintiff had a full range of motion in the cervical spine, limited range of motion in the lumbosacral spine, a positive straight leg raising ("SLR") test at 45 degrees bilaterally with a negative SLR test while sitting, limited range of motion in the hips, zero positive trigger points, and decreased deep tendon reflexes ("DTRs") and strength in the lower extremities with no sensory deficit noted. (T. 688-89.) Dr. Mwantuali assessed a guarded prognosis and diagnosed chronic neck pain status post cervical spine injury now with chronic pain and radiculopathy, low back pain, a history of sciatica, spinal stenosis and arthritis with pain radiating to the hip and bilateral legs, depression, anxiety, fibromyalgia, and asthma. (T. 689.)

17

She opined Plaintiff should avoid respiratory triggers, had mild limitations with bending, twisting, lifting, pushing and pulling, and had moderate limitations with standing, walking, kneeling, crawling, squatting and climbing.  (*Id*.)  The ALJ afforded this opinion significant weight based on Dr. Mwantuali's programmatic expertise and because her opinion was supported by the objective clinical and laboratory findings of record.  (T. 21-22.)

In April 2015, treating physician Dr. Betro-Shkane indicated Plaintiff had been her patient for 12 years and diagnosed spinal stenosis, degenerative disc, arthritis, depression, anxiety, fibromyalgia, and chronic back pain with a poor prognosis.  (T. 779.)  Dr. Betro-Shkane opined Plaintiff was incapable of even low stress jobs; she could walk half a city block without rest or severe pain, sit or stand for 15 minutes at one time, and sit or stand/walk for less than two hours total in an 8-hour work day; she would need to take unscheduled breaks two-to-three times an hour for ten-to-fifteen minutes, could rarely lift/carry up to ten pounds, could rarely twist, stoop (bend), crouch/squat, or climb stairs, could never climb ladders, and could occasionally use her hands, fingers, and arms for gross and fine manipulation and reaching.  (T. 780-81.)  Dr. Betro-Shkane also opined Plaintiff must use a cane or other assistive device while engaging in occasional standing/walking; Plaintiff's pain or other symptoms would constantly be severe enough to interfere with the attention and concentration needed to perform even simple tasks; and, due to depression and anxiety, she was unable to concentrate on any job for more than fifteen-to-twenty minutes.  (*Id*.)  The ALJ afforded limited weight to this opinion because the significant functional limitations identified were not supported by the objective evidence including progress notes from Dr. Betro-Shkane's office.  (T. 22.)

For example, while Dr. Betro-Shkane opined Plaintiff was unable to maintain concentration for more than 20 minutes, Plaintiff's attention and concentration and recent and

18

remote memory skills were intact at the consultative evaluation.  (T. 22, 683-84.)  Plaintiff

denied experiencing any significant depressive or anxiety-related symptoms, further

contradicting Dr. Betro-Shkane's opined mental limitations.  (T. 682-83.)   The ALJ pointed out

Plaintiff's daily activities, inconsistencies between this opinion and Dr. Mwantuali's findings at

the consultative examination, and Plaintiff's discharge from mental health treatment for a lack of

compliance with treatment recommendations.  (T. 22, 687, 774.)  Plaintiff's reported activities of

daily living, including preparing simple meals, cleaning, doing laundry, going shopping, and

engaging in leisure activities contradicted the significant postural limitations opined by Dr.

Betro-Shkane.  (T. 70-71, 83-84, 86-87, 89-93, 235, 237, 241, 687.)  Dr. Betro-Shkane advised

the opined limitations were based in part on Plaintiff's fibromyalgia, but Plaintiff had no tender

points associated with fibromyalgia at the January 2014 consultative examination and April 2014

progress notes from Dr. Betro-Shkane's office indicated no evidence of facet tenderness or

trigger points along the cervical spine.  (T. 688, 790.)  Dr. Betro-Shkane's January 2014 progress

notes indicated Plaintiff's pain was well-controlled, which was inconsistent with the physician's

reports that Plaintiff's prognosis was poor.  (T. 22, 787.)

  The ALJ also subsequently noted the objective evidence in the record supported Dr.

Mwantuali's opinion and contradicted Plaintiff's testimony and the significant functional

limitations identified by Dr. Betro-Shkane.  (T. 22-23.)  This evidence included (a) progress

notes between October 2011 and April 2014 indicating benign musculoskeletal examinations

with Plaintiff's pain being noted as well-controlled, (b) progress notes indicating Plaintiff

benefitted from epidural injections and her symptoms improved with physical therapy, (c)

progress notes indicating Plaintiff failed to continue with physical therapy despite her noted

improvement, and (d) Plaintiff's reports that her pain levels improved with pain medication.  (T. 298, 300, 302, 382, 403, 417, 419, 439, 497, 500, 556, 558-59, 561, 564-65, 697, 729, 785.)

Plaintiff's contentions pertaining to Dr. Betro-Shkane's opinion include the arguments that the ALJ may not reject the opinion of a treating physician on the basis that the opinion allegedly conflicted with the physician's own clinical findings and an ALJ may not arbitrarily substitute his own judgment for a competent medical opinion.  (Dkt. No. 11 at 8.)  The Court notes Plaintiff does not provide a substantive analysis of the ALJ's consideration of the opinion evidence or include any explicit reasoning to explain why the ALJ's assessment of the opinion evidence, including Dr. Betro-Shkane's opinion, was erroneous.  (*Id*. at 6-9.)

As summarized above, the ALJ provided multiple reasons for the weight afforded to Dr. Betro-Shkane's opinion including (a) the significant functional limitations identified were not supported by the objective evidence in record, including progress notes from Dr. Betro-Shkane's office, (b) inconsistencies between this opinion and Dr. Mwantuali's findings at the consultative examination, (c) Plaintiff's discharge from mental health treatment for a lack of compliance with treatment recommendations, and (d) Plaintiff's daily activities.  (T. 22-23.)  The medical records and other evidence support the ALJ's determination.  (T. 70-71, 83-84, 86-87, 89-93, 235, 237, 241, 298, 300, 302, 382, 403, 417, 419, 439, 497, 500, 556, 558-59, 561, 564-65, 682-89, 697, 729, 785.)  In rejecting the significant limitations opined by Dr. Betro-Shkane, the ALJ relied on the opinion of Dr. Mwantuali and even included further limitations in the RFC.  (T. 20-23.)  Therefore, the ALJ neither relied solely on the alleged inconsistencies between Dr. Betro-Shkane's opinion and her own clinical findings nor arbitrarily substituted his own judgment for that of a competent medical opinion.

Further, in considering the opinion evidence, the ALJ was entitled to resolve the evidentiary conflicts before him in determining the RFC and to rely on the opinion of consultative examiner Dr. Mwantuali since it was better supported or more consistent with the evidence as a whole. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014).  It is clear the ALJ properly relied on Dr. Mwantuali's opinion to which he afforded significant weight, and those opinions of Drs. Ferraraccio and Connolly to which he afforded some weight, in finding that the significant limitations opined by Dr. Betro-Shkane were not supported by the evidence of record.  (T. 21-23.)  The Court therefore finds the ALJ did not err in affording limited weight to Dr. Betro-Shkane's opinion or in relying on any of the other opinion evidence in the record.

### 2.    Plaintiff's Alleged Use of a Handheld Assistive Device

Plaintiff testified at the administrative hearing in May 2015 that she uses a cane prescribed by her doctor and had been using it for about two years.  (T. 71.)  In her April 2015 opinion, Dr. Betro-Shkane opined Plaintiff must use a cane or other assistive device while engaging in occasional standing/walking.  (T. 780.)  However, Dr. Mwantuali noted Plaintiff did not use an assistive device at the time of the consultative examination in January 2014.  (T. 687.)  Again, it was within the ALJ's purview to resolve these conflicts within the evidence.  *Bliss*, 2015 WL 457643, at *7; *Petell*, 2014 WL 1123477, at *10.  Further, Plaintiff does not cite any evidence in the record indicating her cane was medically necessary or was actually prescribed by her physician.  (Dkt. No. 11 at 6-9.)  As argued by Defendant, Plaintiff has therefore not proven

her use of a cane was medically necessary prior to her date last insured of March 31, 2014, as required by SSR 96-9p.  (Dkt. No. 13, at 18.)  *See* 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ."); *Gordon v. Colvin*, 14-CV-0541 (GTS), 2015 WL 4041729, at *4-5 (N.D.N.Y. July 1, 2015).  The Court therefore finds the ALJ did not err in failing to include limitations related to the use of a cane within the RFC.

### 3.    Plaintiff's Workers' Compensation Rating

Plaintiff argues Workers' Compensation classifications, while not binding on the Administration, must be given some weight.  (Dkt. No. 11 at 9 [citing *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975)].)  The record shows Plaintiff had a work-related injury in 2007 involving her left shoulder and neck and the State of New York Workers' Compensation Board found she had a loss of wage earning capacity of 68.7 percent in the same employment or otherwise as a result of these injuries.  (T. 187-88, 208-20.)

Indeed, *Cutler* indicates "the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, [but] it is entitled to some weight and should be considered."  516 F.2d at 1286.  However, it is clear from the ALJ's decision that he adequately considered Plaintiff's Workers' Compensation rating and the examination reports related to that claim.  (T. 21-22.)  The ALJ afforded some weight to the associated opinions of Drs. Ferraraccio and Connolly and explicitly indicated the Workers' Compensation reports and summary of benefits were considered for reported clinical and diagnostic findings and functional limitations only.  (*Id.*)  The ALJ noted any conclusory statements assessing disability under Workers' Compensation guidelines or rules were not

considered as they were based upon the Workers' Compensation Board's own rules and methodology which were not binding on the ALJ and represented an opinion on an issue reserved to the Commissioner.  (*Id.*)  Additionally, the Court sees no obvious inconsistency between a disability rating of 68.7 percent and the significant limitations the ALJ included in the RFC, since 68.7 percent does not reasonably equate to total disability or inability to work in any capacity.  The Court therefore finds the ALJ did not err in his consideration of Plaintiff's Workers' Compensation rating.

For the reasons outlined above, the ALJ's analysis of the medical opinions, Plaintiff's Workers' Compensation rating, Plaintiff's alleged need to use a cane, and the resulting RFC are supported by substantial evidence.  Remand is therefore not required on this basis.

### C.        Substantial Evidence Supports the Credibility Determination

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence."  *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant," and, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705

F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Because the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

The ALJ found Plaintiff's subjective complaints were only partially credible.  (T. 23.) He determined Plaintiff's allegations were contradicted by the treatment records which showed her musculoskeletal symptoms improved with conservative treatment modalities, she was noncompliant with mental health treatment, and she had normal mental status examinations; she also had a broad range of daily activities.  (*Id.*; *see, e.g.*, T. 298, 300, 302, 382, 386, 391, 403, 407, 410, 417, 419, 439, 497, 500, 503-04, 510-11, 527, 532, 536, 556, 558-61, 564-66, 687, 698, 720, 729, 774, 785.)  Plaintiff reported being able to engage in greater activity levels after attending physical therapy, she was independent with her activities of daily living, and she lived alone, all of which the ALJ indicated was consistent with the ability to perform sedentary work activity.  (T. 23, 441, 499, 681, 787.)

Plaintiff appears to argue the ALJ did not properly consider her subjective statements in relation to the factors indicated in the regulations and SSR 96-7p.  Aside from suggesting a claimant's participation in activities of daily living is not comparable to substantial gainful activity on a regular and continuing basis, Plaintiff engages in no discussion of the ALJ's credibility analysis and fails to point to any particular factor(s) the ALJ failed to consider.  (Dkt. No. 11 at 9-10.)  The ALJ's analysis as summarized above and the ALJ's overall decision indicate an adequate consideration of the regulatory factors including Plaintiff's symptoms, treatment, and daily activities.

The ALJ's credibility finding was therefore based on a proper application of the required analysis and is supported by substantial evidence.  Remand is not required on this basis.

### D.    Substantial Evidence Supports the Step Five Finding

The burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).  "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'"  *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603).  "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'"  *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

 Here, the ALJ found Plaintiff was capable of performing jobs existing in significant numbers in the national economy including order clerk (food and beverage), charge account clerk, and document preparer based on the VE testimony and the framework of Medical-Vocational Rule 201.28.  (T. 24-25.)  Plaintiff argues the Step Five determination is based on testimony from the VE which cannot constitute substantial evidence because it was based on a hypothetical question that did not accurately reflect the full extent of Plaintiff's limitations. (Dkt. No. 11 at 1, 11.)  The Court finds this argument unpersuasive.  As discussed above in Sections III.A., III.B., and III.C. of this Decision and Order, the ALJ's analysis of Plaintiff's

impairments and limitations, and the resulting RFC and credibility determinations, are supported by substantial evidence.  Because the ALJ used those findings when posing the hypothetical questions to the VE, and relied on the VE's answers based on those limitations, the Step Five finding is supported by substantial evidence.  Remand is not required on this basis.

**ACCORDINGLY**, it is

      **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

      **ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: May 10, 2018
Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge